# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **THE BUDD COMPANY,** a Michigan Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 02 C 154 |
| v. | ) ) ) | Magistrate Judge Martin C. Ashman |
| **APPLIED COMPOSITES CORP.,** an Illinois Corporation, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, The Budd Company, moves this Court to reinstate this case and enforce its settlement agreement with Defendant, Applied Composites Corp. This case was removed to the United States District Court for the Northern District of Illinois on the basis of diversity of citizenship, at which time both parties consented to have a magistrate judge conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). On August 11, 2003, the parties agreed to voluntarily dismiss their case in accordance with the terms of a settlement agreement negotiated with the assistance of this Court. Plaintiff now seeks a judgment against Defendant in the amount of $1,120,034, which represents the entire amount Defendant currently owes Plaintiff under the settlement agreement plus attorneys' fees of $800. For the reasons that follow, Plaintiff's motion is granted.

## I. Background

Plaintiff filed a breach of contract suit in Illinois state court. Defendant removed the suit to the United States District Court for the Northern District of Illinois on the basis of diversity of citizenship and subsequently filed a counterclaim against Plaintiff to recover payments for allegedly non-conforming goods. On August 11, 2003, the parties agreed to voluntarily dismiss their case with prejudice in accordance with the terms of a settlement agreement negotiated with the assistance of this Court. (Pl.'s Mot. at Ex. E.) The agreement provided, in relevant part, that Defendant would pay Plaintiff $1,547,000 at the rate of $25,000 per month beginning in August 2003 and continuing from month to month until the entire amount was paid. (Pl.'s Mot. at Ex. A.) Under the terms of the agreement, Defendant was authorized to skip two months of payments per year; in the absence of advance notice to the contrary, those months were to be August and December. (Id.) Payments were due on the first business day of the month, with a ten-business-day grace period. (Id.) At the expiration of this grace period, Defendant would be in default according to the terms of the agreement. (Id.) The agreed order dismissing the case also stated that this Court would retain jurisdiction for the purpose of enforcing the terms of the settlement agreement. (Id.)

All parties agree that Defendant complied with the terms of the settlement agreement through December 2004.

Defendant defaulted on its January, February, and March of 2005 payments. On March 9, 2005, Plaintiff filed a Motion to Reinstate Case and for a judgment in the amount of the outstanding payments. On March 15, 2004, judgment was entered in favor of Plaintiff for

$50,000, which represented the total of the three outstanding monthly payments less a $25,000 set-off to Defendant for a $25,000 payment made to Plaintiff in open court on that date.

According to Plaintiff's motion and statements in open court, which Defendant does not oppose, Defendant has subsequently failed to make its monthly payments for April and May of 2005. Furthermore, Plaintiff has provided the Court with evidence that Defendant has undertaken an assignment for the benefit of creditors. (Pl.'s Supp. Mem. at Ex. A.) The evidence presented by Plaintiff shows that Defendant's liabilities exceed its assets by approximately $1.5 million and that Defendant has assigned all of its assets to a trustee for the purpose of selling off Defendant's assets and distributing all proceeds to Defendant's creditors. (Id.)

On June 2, 2005, Plaintiff filed this Motion to Reinstate Case and Enforce Settlement Agreement, which differs from its previous motion before this Court in that it seeks a judgment for the entire amount outstanding under the settlement agreement and includes an affidavit to the effect that the amount remaining to be paid is $1,119,234. (Pl.'s Mot. at Ex. G.) Plaintiff also seeks attorneys' fees of $800 in accordance with the provision of the settlement agreement that awards attorneys' fees to a party that successfully seeks the Court's assistance to remedy an uncured breach of the agreement by another party. (Pl.'s Mot. at Ex. A, H.)

## II. Discussion

Plaintiff moves the Court to reinstate this case and enforce the settlement agreement by entering a judgment for Plaintiff for the total amount remaining to be paid under the settlement agreement and for attorneys' fees as provided in the settlement agreement. Plaintiff alleges that Defendant's course of conduct since January 2005 constitutes an anticipatory repudiation of the

settlement agreement, and that, as a result of this anticipatory repudiation, Plaintiff is entitled to judgment for the entire amount remaining to be paid under the agreement.

This Court has the power to reinstate the case in order to enforce the settlement agreement. The parties agreed that this Court would retain jurisdiction over the case for the purpose of enforcing the terms of the settlement and this agreement was incorporated into the Agreed Order of Dismissal signed by the parties and the Court on August 11, 2003. (Pl.'s Mot. at Ex. E.) It follows that this Court has jurisdiction to reinstate the case and enter judgments in order to enforce the settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994). Because the basis for jurisdiction over the original action was diversity of citizenship pursuant to 28 U.S.C. § 1332, the Court applies the substantive law of the State of Illinois to resolve this matter.

### A. Anticipatory Repudiation

Plaintiff alleges that Defendant's course of conduct beginning in January 2005 constitutes an anticipatory repudiation of the settlement agreement. Defendant's conduct since that time, as stated in Plaintiff's motion and memorandum and agreed by both parties in open court, includes defaulting on the monthly payments for January, February, March, April, and May of 2005, as well as undertaking an assignment for the benefit of creditors on March 31, 2005.

Under Illinois law, an anticipatory repudiation occurs when the "repudiating party unequivocally and without justification renounces its duty to perform the contract on its date of performance." *Busse v. Paul Revere Life Ins. Co.*, 793 N.E.2d 779, 783 (Ill. App. Ct. 2003) (internal quotations omitted). Conduct which constitutes a repudiation is normally an explicit

statement by the repudiating party that they cannot or will not perform under the terms of the contract. *Wilmette Partners v. Hamel*, 594 N.E.2d 1177, 1186 (Ill. App. Ct. 1992). An affirmative act by a party to a contract which is inconsistent with the ability or willingness to perform may also constitute an anticipatory repudiation. In *Casati v. Aero Marine Mgmt. Co.*, the defendant formed a contract with the plaintiff under which the plaintiff was to receive compensation for finding a buyer for the defendant's property within a specified time. 413 N.E.2d 122, 125 (Ill. App. Ct. 1980). That court found that the defendant repudiated its contract when it took the property off the market before the expiration of the period during which the plaintiff could produce a buyer, an action which was inconsistent with its performance under the contract. *Id. See also* Restatement (Second) of Contracts § 250 (1981) (affirmative act which renders obligor unable or apparently unable to perform is a repudiation).

In this context, Defendant's course of conduct since January 2005 amounts to an anticipatory repudiation of the settlement agreement. First, Defendant's repeated failure to voluntarily make payments to Plaintiff each month creates an inference that Defendant does not intend to comply with the terms of the agreement for the six remaining years of the agreement. This inference is strengthened by Defendant's assignment of all of its assets to a trustee for the benefit of its creditors. The record shows that Defendant's liabilities outweigh its assets by roughly $1.5 million and that, under the terms of Defendant's assignment for the benefit of creditors, its assets will be liquidated and the proceeds distributed to its creditors. Thus, while the series of payments in default might show that Defendant is unwilling to perform under the terms of the settlement agreement, the assignment for the benefit of creditors suggests that Defendant is unable to pay Plaintiff $25,000 per month for the next six years. The combination

of these factors makes it extremely improbable that Defendant will render performance in the future and therefore constitutes an anticipatory repudiation.

This conclusion is strengthened by the way in which Illinois law has treated bankruptcy in the context of contract law. In *Bigelow v. Bicek*, the court agreed with the Minnesota Supreme Court that "[o]rdinarily, bankruptcy is a complete disablement of the bankrupt from performance of his contracts and the equivalent of a repudiation . . . ." 18 N.E.2d 398, 402 (Ill. App. Ct. 1938) (quoting *Stern v. Mayer*, 207 N.W. 737, 739 (Minn. 1926)). The court agreed with the Minnesota Supreme Court's assessment that "[the bankrupt corporation] for all purposes was lifeless and consequently there could be no performance" of its contractual obligations. *Id.*

While an assignment for the benefit of creditors is not in all ways equivalent to bankruptcy *per se*, it is similar in the respect that, like a corporation which is in bankruptcy, a corporation which has assigned all of its assets to a trustee is no longer able to directly fulfill its monetary contract obligations. In *Ill. Bell Tel. Co. v. Wolf Furniture House Corp.*, the court described an assignment for the benefit of creditors as "pass[ing] the legal and equitable title to the property absolutely, beyond the control of the assignor." 509 N.E.2d 1289, 1292 (Ill. App. Ct. 1987) (quoting *Browne-Chapin Lumber Co. v. Union Nat'l Bank of Chicago*, 42 N.E. 967, 970 (Ill. 1896)). The connection between the common-law assignment for the benefit of creditors and bankruptcy is also demonstrated by the fact that, until the abolition of the concept of "acts of bankruptcy" from the United States Code, an assignment for the benefit of creditors was specified in Chapter 11 as an "act of bankruptcy." *See* 11 U.S.C. § 21(a) (1976) (assignment of assets is an act of bankruptcy). *See also* S. Rep. No. 989, 95th Cong., 2d Sess. 34

(1978); U.S. Code & Admin. News 1978, pp. 5787, 5820 (The Bankruptcy Reform Act of 1978 abolished the concept of "acts of bankruptcy.").

In short, Defendant has defaulted on several consecutive payments and placed itself in a situation akin to bankruptcy by undertaking an assignment for the benefit of creditors. This Court is satisfied that Defendant's course of conduct is sufficient to constitute an anticipatory repudiation of the settlement agreement.

### B. Plaintiff's Remedy

Plaintiff seeks a judgment for the entire amount remaining to be paid under the settlement agreement. Under Illinois law, in cases of anticipatory repudiation, the non-repudiating party may (1) treat the contract as rescinded and sue on a *quantum meruit* basis, (2) keep the contract alive for the benefit of both parties, or (3) treat the repudiation as putting an end to the contract for all purposes of performance and sue for damages. *Casati*, 413 N.E.2d at 127. *See also Equity Ins. Managers of Ill., LLC v. McNichols*, 755 N.E.2d 75, 80 (Ill. App. Ct. 2001) (measure of damages is the amount that will put non-breaching party in as good a position as they would be in if contract was performed). If the non-repudiating party chooses to treat the repudiation as putting an end to the contract for all purposes of performance, that party may "sue for the profits he would have realized" had the contract been performed. *Casati*, 413 N.E.2d at 127. This is the option Plaintiff chooses. Because there has been an anticipatory repudiation of the whole contract, as discussed above, under Illinois law, Plaintiff is entitled to recover the entire outstanding consideration for the settlement agreement.

## C. Attorneys' Fees

Plaintiff also seeks to recover attorneys' fees of $800. (Pl.'s Mot. at Ex. H.) The settlement agreement expressly provides that "if a party must seek the assistance of the Court to remedy an uncured breach . . . the Court shall award the prevailing party . . . reasonable attorneys' fees." (Pl.'s Mot. at Ex. A.) As Plaintiff prevails on this motion seeking a remedy for Defendant's breach, Plaintiff is entitled to its reasonable attorneys' fees of $800.

## D. Defendant's Response

At a hearing before this Court on June 2, 2005, Defendant's counsel declined to submit a response to Plaintiff's motion. However, defendant's counsel did refer the Court to Illinois statute 815 ILCS § 105/9. This statute relates to "Failure of Consideration" and it is unclear how this applies to the instant case. Since it is unclear how Defendant contends that this statute applies to this case, and Defendant has made no attempt to argue its relevance, it does not carry any persuasive weight in opposition to Plaintiff's motion.

## III. Conclusion

For the reasons stated above, Plaintiff's motion is granted, and judgment is entered for Plaintiff in the amount of $1,120,034.00.

**ENTER ORDER:**

/s/ Martin C. Ashman

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: June 27, 2005.

Copies have been mailed to:

| | |
|---|---|
| MICHAEL W. DUFFY, Esq.<br>JOHN S. SAWIN, Esq.<br>Childress Duffy Goldblatt, Ltd.<br>515 North State Street<br>Suite 2200<br>Chicago, IL 60610 | JOHN T. ALLEN, Esq.<br>Law Office of John T. Allen, P.C.<br>39 South LaSalle Street<br>Suite 200<br>Chicago, IL 60603-1641 |
| Attorneys for Plaintiff | Attorney for Defendant |